### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**LUIS MARTINEZ,**

                          **Plaintiff,**

**-vs-**                                                    **Case No.  6:06-cv-1062-Orl-28KRS**

**WORKFORCE CENTRAL FLORIDA,**

                          **Defendant.**
_____

## ORDER

Plaintiff Luis Martinez brings the instant action against his former employer, Workforce Central Florida ("WCF"), alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Florida Civil Rights Act of 1992, sections 509.092, 760.01-.11, Florida Statutes ("the FCRA").  Plaintiff, who was born in Puerto Rico and considers himself "a black Hispanic,"[1] contends that he was harassed and otherwise discriminated against based on his race and national origin. He also claims that he was suspended and terminated in retaliation for making complaints about discrimination.

This case is before the Court on the Motion for Summary Judgment (Doc. 26) filed by WCF, in response to which Plaintiff has filed a Memorandum in Opposition (Doc. 28). Having considered the parties' submissions, the record, and pertinent law, the Court concludes that WCF's motion must be granted as to all of Plaintiff's claims.

_____

[1](See Pl.'s Dep., Attach. to Doc. 25, at 156).

I. Background[2]

WCF describes itself as "a private, nonprofit regional workforce board headquartered in Lake Mary, Florida that provides placement and career services to employers and job seekers throughout Central Florida." (Doc. 26 at 3). Plaintiff began his employment at WCF shortly after Hurricane Charley struck the central Florida area in August 2004. His initial position as a Customer Service Specialist involved screening applicants who had been displaced by the 2004 hurricanes.

In October 2004, Plaintiff became a Business Development Representative ("BDR") for WCF, a temporary position funded by a National Emergency Grant ("NEG"). As a BDR, Plaintiff's job involved "communicating the specifics of the NEG program to non-profit organizations." (Doc. 26 at 5). Plaintiff was based at WCF's Orlando facility at that time, but he spent approximately thirty hours per work outside the facility visiting non-profit organizations. Plaintiff's supervisor was Doug Smith, a Business Development Manager ("BDM"); Smith in turn reported to Ken Osman, the NEG Project Director.

In the spring of 2005, Plaintiff applied for and obtained the position of full-time Customer Service Representative in WCF's call center in Lake Mary, starting in that position effective April 19, 2005. His new supervisor was Susan Awad, the Telecommunications Manager. Awad reported to WCF's Chief Financial Officer, Barry Neece. As a Customer

_____

[2]The Background section is taken largely from the Statement of Undisputed Material Facts in WCF's motion (Doc. 26), which in turn is largely based on Plaintiff's deposition (see id. at 3 n.2) but also includes citations to affidavits of three WCF employees. Plaintiff has not specifically contested WCF's statement of undisputed facts. (See generally Pl.'s Mem. in Opp'n).

Service Representative, Plaintiff's job involved data entry – inputting orders from employers for job applicants.

On July 11, 2005, Plaintiff, along with other WCF employees, attended a training program regarding harassment in the workplace that lasted one hour.  On that day, Martinez only entered four orders instead of the 15 per day that were required. On July 13, 2005, Ms. Awad orally warned Plaintiff about his low productivity.  Two days later, one of Plaintiff's female co-workers complained to Ms. Awad that she was afraid to be alone with Plaintiff and that Plaintiff "winked at her and stared at her breasts and made inappropriate comments to her about her body." (Doc. 26 at 7).  WCF's Employee Relations Manager, Peggy Isaacson, began an investigation into the complaint that very day.  Plaintiff's other co-workers were interviewed, and two of them (both female) stated that Plaintiff winked at them, made comments about women's bodies, and looked at them inappropriately.

On July 26, 2005, Ms. Isaacson interviewed Plaintiff about the allegations his female co-workers had made against him.  Plaintiff responded by stating that one of those females had "come onto him"; asked about his personal and sex life; and engaged in sexual banter with other co-workers.  Plaintiff also asserted that his female co-workers flirted with him and "looked at pictures of naked men on their computers."  Twenty minutes after that interview, Plaintiff gave Ms. Isaacson and Ms. Awad a three-page list of twenty-nine allegations against his former supervisor, Ken Osman; Ms. Awad's supervisor, Mr. Neece; and Hugh Bleddyn, the Vice President of Employer Services.  Ms. Isaacson told Plaintiff that she would investigate his contentions.

The next day, July 27, 2005, Ms. Isaacson asked Plaintiff to provide additional

information, including the dates of the alleged incidents and the names of any witnesses. Also on that day, Ms. Awad searched the computers of Plaintiff's female co-workers for pornographic material and found none.  On July 28, 2005, WCF retained a third-party investigator, Caroline Lovelace, to investigate Plaintiff's complaints.   Ms. Lovelace interviewed Plaintiff and eighteen WCF employees, and on August 9, 2005 she provided a preliminary oral report to Ms. Cobb and WCF's President, Gary Earl, indicating that her investigation did not substantiate Plaintiff's allegations.  This preliminary report was followed up by a forty-six page written report at the end of August.  In that report, the witnesses that Plaintiff himself listed as supporting his 29-item list did not corroborate his account of events. (See Investigation Summ., Ex. 13 to Pl.'s Dep.).

On August 16, 2005, Ms. Cobb received a complaint from yet another WCF employee regarding Plaintiff.  That employee stated that Plaintiff had made threatening statements about her son; Plaintiff told her to be careful because children the age of her son were being kidnapped at gunpoint.  WCF's President, Mr. Earl, placed Plaintiff on a paid suspension pending an investigation into this complaint.[3]   Plaintiff denied making the threatening

_____

[3]In a memorandum to Plaintiff dated August 16, 2005, Mr. Earl stated in part:

> I have received a disturbing complaint from a WCF employee that this morning you made threatening statements about the safety of her son.  Threats of violence and intimidation of anyone connected with WCF are a violation of acceptable conduct in our workplace.  In response to this incident, we are suspending you, pending complete investigation of today's incident.

(Ex. 10 to Pl.'s Dep.)

statement, but WCF credited the complaining employee's account of events.

In a letter dated September 2, 2005, Mr. Earl informed Plaintiff that his employment was terminated effective September 9, 2005.  (Letter from Earl to Martinez, Sept. 2, 2005, Ex. 11 to Pl.'s Dep.).  Ms. Cobb states in an affidavit that she and Mr. Earl made the decision to terminate Plaintiff.  (Cobb Aff. ¶ 25).  Mr. Earl stated in his letter, and Ms. Cobb states in her affidavit, that the reasons for Plaintiff's termination were:  unacceptable job performance; complaints against him of sexual harassment, which were substantiated by an investigation; Plaintiff's false claims of harassment by his female co-workers, as proven untrue in an investigation; and the threatening comment Plaintiff made to a co-employee regarding the safety of her child.  (Ex. 11 to Pl.'s Dep.; Cobb Aff. ¶ 25).

Meanwhile, in August 2005, Plaintiff had filed two charges of discrimination with the EEOC and the Orlando Office of Human Relations.  First, on August 8, 2005, Plaintiff filed a charge alleging discrimination based on race and national origin.  (Ex. 4 to Pl.'s Dep.).  In that charge, Plaintiff described harassment and intimidation by Hugh Bleddyn and Ken Osman in the form of "name calling" and "comments."  (Id.)  The EEOC sent Plaintiff a Notice of Suit Rights on December 14, 2005 with regard to this first charge.  (Ex. 7 to Pl.'s Dep.).

Plaintiff filed a second charge of discrimination on August 23, 2005; in that charge, he alleged retaliation.  (Ex. 8 to Pl.'s Dep.).  Specifically, Plaintiff alleged that he was retaliated against on August 16, 2005 when he was indefinitely suspended after he complained to Ms. Isaacson and filed his first EEOC charge.  (Id.)  The EEOC issued a

Notice of Right to Sue on this second charge on April 6, 2006.[4]  (Ex. 9 to Pl.'s Dep.).  Plaintiff filed this lawsuit in state court on June 27, 2006, (see Compl., Doc. 2), and WCF removed it to this court, (Notice of Removal, Doc. 1).

## II.  Discussion

### A.  Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of establishing that no genuine issues of material fact remain.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

---

[4]This charge bears a date of 2008, but the parties agree that the year is incorrect and should be 2006.

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.'  Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson, 477 U.S. at 251-52); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").  "[T]he summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale." Chapman v. AI Transp., 229 F.3d 1012, 1026 (11th Cir. 2000).

B.  The Merits of WCF's Motion

In his Complaint, Plaintiff brings claims of discrimination based on race and national origin as well as a claim of retaliation for complaining about that discrimination.  The counts are not artfully presented,[5] but the Court construes the Complaint as alleging hostile work

---

[5]Plaintiff purports to allege four counts:  Count I – "Violations of Florida Civil Rights Act," in which he apparently alleges race discrimination, national origin, and retaliation; Count II – Race Discrimination under Title VII; Count III – National Origin Discrimination under Title VII; and Count IV – Retaliation under Title VII.  (See Doc. 2).  These counts are confusingly presented.  In several places, the Complaint refers to age discrimination or the Age Discrimination in Employment Act, a statute that is clearly not involved in this case; Mr. Martinez is not old enough to have a cause of action under that statute, and it is apparent from the record evidence that he is not pursuing such a claim.  (See, e.g., Count I (requesting liquidated damages pursuant to 29 U.S.C. § 626(b) – an ADEA provision – and "[o]ther such relief as may be appropriate to effectuate the purposes of the ADEA"); Count

environment harassment, disparate treatment, and retaliation under both Title VII and the FCRA.

In its summary judgment motion, WCF challenges Plaintiff's claims both procedurally and substantively.   WCF contends that Plaintiff's Title VII harassment claim is barred because Plaintiff did not file suit within 90 days of receipt of his Notice of Right to Sue with regard to his first EEOC charge.  Additionally, WCF asserts that Plaintiff's claims under both Title VII and the FCRA alleging disparate treatment and retaliatory termination are barred because he never filed an administrative charge with regard to these claims.  Finally, WCF argues that even if Plaintiff's claims are found not to be barred for failure to comply with filing requirements they fail on their merits.  These contentions are addressed in turn.

---

II (alleging, under heading of "Race Discrimination," that WCF discriminated against Plaintiff "on the basis of his age in violation of Title VII" and again requesting liquidated damages under 29 U.S.C. § 626(b)); Count III (again seeking liquidated damages under 29 U.S.C. § 626(b)); and Count IV (same)).  Moreover, one paragraph the Factual Allegations section of the Complaint states that Plaintiff was terminated on July 10, 2003 (Compl. ¶ 12); this is in contradiction to other allegations that he began work in 2004 and was terminated in September 2005 (id. ¶¶ 2 & 11).

It appears that this Complaint is an "overwrite" of a prior age-discrimination complaint. At a minimum, it is carelessly written.  Indeed, had WCF brought these errors to the Court's attention earlier in the case, the Court would have required repleading; curiously, in its summary judgment motion WCF mentions only one clerical error in the Complaint – the date of its filing (see Doc. 26 at 2 n.1).  Plaintiff's memorandum in opposition to summary judgment (Doc. 28) – which can charitably be called, at best, minimalist – apparently is also an "overwriting" of a document from a prior, unrelated case.  The memorandum refers to filing of an EEOC charge in June 2000 and to Plaintiff being "moved to the 901 building and . . . still at a Grade 215 with no promotions in the last tree [sic] years."  (Doc. 28 at 6).  These facts do not appear to be those of this case; Plaintiff filed his EEOC charges in 2005; there is no reference in the record to a "901 building," a "Grade 215," or a grade of any kind; and Plaintiff worked for WCF for only one year – thus, the contention that he was denied promotions for three years makes no sense in the context of this case.

1.  Timeliness/Exhaustion of Administrative Remedies[6]

a.  *The First EEOC Charge*

As earlier noted, Plaintiff filed his first EEOC charge – alleging harassment based on race and national origin by Hugh Bleddyn and Ken Osman – on August 8, 2005.  The EEOC sent Plaintiff a "Dismissal Notice of Suit Rights" (Ex. 7 to Pl.'s Dep.) on December 14, 2005, and Plaintiff acknowledged in his deposition that he received that notice within a week of that time.  (Pl.'s Dep. at 174-75).  As noted in that Notice of Suit Rights, Plaintiff was required to file a lawsuit within 90 days of his receipt of that Notice or his right to sue would be lost.  See 42 U.S.C. § 2000e-5(f)(1) ("If a charge filed with the Commission . . . is dismissed by the Commission, . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . .").

Plaintiff did not file his lawsuit within ninety days of December 21, 2005; thus, he may not now bring a claim under Title VII based on the acts described in his first EEOC charge. See, e.g., Laurey v. Chemung County Dep't of Soc. Servs., 327 F. Supp. 2d 247, 250 (W.D.N.Y. 2004) (finding disparate treatment claim alleged in first EEOC charge barred where plaintiff did not file suit within ninety days of receiving right-to-sue letter with regard to that charge; retaliation claim based on second charge, however, was viable because it was timely pursued after receipt of second right-to-sue letter).  His Title VII hostile work

_____

[6]Plaintiff makes no response whatsoever to WCF's contentions regarding the timeliness or administrative exhaustion of his claims.  The Court nevertheless addresses these issues on their merits rather than regarding them as conceded.

environment claim is thus barred.

### b.  The Second EEOC Charge

Plaintiff's second charge, filed on August 23, 2005, alleged that WCF retaliated against him – by suspending him – after he filed his first charge alleging harassment.  The EEOC issued a Right-to-Sue Letter with regard to this charge on April 6, 2006.  Plaintiff filed this suit within ninety days of that date.  Thus, the lawsuit was timely filed as to the second charge.  WCF, however, contends that the only claims Plaintiff may bring based on this charge are retaliatory suspension claims – not claims of disparate treatment based on race or national origin, and not retaliatory termination.  WCF is correct with regard to the disparate treatment claims but not with regard to retaliatory termination.

Plaintiff seemingly attempts to bring claims of disparate treatment – including, for example, denial of promotions and termination[7] – based on his race and national origin.  However, Plaintiff never filed an administrative charge alleging these forms of discrimination.  His first EEOC charge described only harassment, and his second EEOC charge described only retaliation.

"Although [courts] liberally construe EEOC charges that are prepared without the assistance of counsel, 'a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"  Jerome v. Marriott Residence Inn Barcelo Crestline/AIG, 211 Fed. Appx. 844, 846 (11th Cir.

--------------------------------------------------

[7]In his Complaint, Plaintiff claims that he was reprimanded and terminated based on his national origin and race.  In his summary judgment response, he also alleges that he was denied promotions due to his race and national origin.

2006) (quoting Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004)). Plaintiff did not mention being denied a promotion in either of his EEOC charges (see Exs. 4 & 8 to Pl.'s Dep.), nor can it be said that the denial of a promotion would reasonably be expected to grow out of what Plaintiff described in his EEOC charges.  See id. at 846-47 (affirming grant of motion for judgment on the pleadings on disparate pay claim where EEOC charge alleged only the denial of a promotion).  Indeed, nowhere did Plaintiff allege any type of discrete adverse employment action based on race or national origin.  Thus, to the extent Plaintiff attempts to challenge discrete employment actions on the basis that they were taken because of his race or national origin, he failed to exhaust his administrative remedies with regard to such claims, whether under Title VII or the FCRA.  These claims are barred.[8]

However, Plaintiff may properly pursue his claim of retaliatory termination as well as his claim of retaliatory suspension even though his second EEOC charge only mentioned the suspension.  His termination occurred shortly after the second charge was filed, and under these circumstances he was not required to file another charge alleging retaliatory termination.  See Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 168-69 (11th Cir. 1988).

2.  Substantive Challenges to Plaintiff's Non-Barred Claims

a.  Hostile Work Environment (FCRA)

In his memorandum in opposition to the summary judgment motion Plaintiff does not mention or specifically respond to WCF's arguments regarding his hostile work environment claim.  Therefore, it appears that Plaintiff has abandoned any such claim he may have

---

[8]Even if these claims were properly before the Court, the record evidence does not support them and they would fail on their merits.

attempted to bring under the FCRA.[9]  Even if he had not abandoned it, however, this claim fails.

"A hostile work environment claim . . . is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  As the Eleventh Circuit explained in Miller:

> [A] plaintiff wishing to establish a hostile work environment claim [must] show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Id.  Applying this standard to the facts of this case, Plaintiff's hostile work environment claim fails.

Plaintiff satisfies the first element because he belongs to a protected group based on his race and national origin.  However, even assuming that Plaintiff has satisfied the second and third elements, his claims fail on the fourth element because as a matter of law, the incidents he cites were not "sufficiently severe or pervasive to alter the terms and conditions

_____

[9]In the Complaint, Plaintiff does not mention harassment or a hostile work environment when setting forth his FCRA claims in Count I.  (See Doc. 2 at 3).  The only mention of a hostile work environment is in Count III, which refers only to Title VII.  The Court gives Plaintiff the benefit of the doubt and addresses this claim on the merits under the FCRA.

of employment and create a discriminatorily abusive working environment."

In his Complaint, Plaintiff contends that "[t]he actions of Workforce Central Florida, supervisors [sic] in reprimanding and terminating [Plaintiff] on the basis of National Origin violated Title VII and constituted a hostile work environment for the Plaintiff." (Compl. ¶ 27). His first EEOC charge refers to "harassment and intimidation" based on "racial name calling and comments" by Hugh Bleddyn and Ken Osman. (Ex. 4 to Pl.'s Dep.). In his twenty-nine item list that he submitted to Ms. Isaacson and Ms. Awad in July 2005, Plaintiff describes some comments that refer to race or national origin, but even taken cumulatively they do not amount to an actionable hostile work environment. Comments much more offensive than these have been held to be unactionable. See, e.g., Lusega v. Albrecht & Albrecht, Inc., No. 1:06-CV-0809-JEC, 2007 WL 2226056, at *4 (N.D. Ga. July 31, 2007) (noting that "[c]ases involving more serious allegations than plaintiff's are routinely the subject of summary judgment orders in this Circuit," and collecting cases).

Even taking all of Plaintiff's contentions as true, the comments of Osman and Bleddyn were not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment. To the extent Plaintiff is still attempting to put forth a hostile work environment claim, that claim fails.

    *b. Retaliation (FCRA and Title VII)*

Plaintiff also contends that he was suspended and ultimately terminated in retaliation for his complaints about race and national origin discrimination. The anti-retaliation provision of Title VII provides in part:

        It shall be an unlawful employment practice for an

> employer to discriminate against any of his employees or
> applicants for employment . . . because he has opposed any
> practice made an unlawful employment practice by this
> subchapter, or because he has made a charge, testified,
> assisted, or participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).[10]   Because Plaintiff has not presented any direct evidence of discrimination, the Court evaluates his retaliation claims using the burden-shifting framework established by McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny to determine if Plaintiff can establish his retaliation claims through circumstantial evidence.

Under this framework, the plaintiff in a disparate treatment case has the initial burden to establish a prima facie case of discrimination by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802.  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  If the plaintiff establishes a prima facie case, a presumption of discrimination arises.  See, e.g., Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Once the plaintiff has presented a prima facie case and its attendant presumption, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions.  McDonnell Douglas, 411 U.S. at 802.  The employer's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  Reeves v. Sanderson

---

[10]See also § 760.10(7), Fla. Stat. (providing that "[i]t is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section").

Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).  If the employer meets its burden of production, "'the McDonnell Douglas framework – with its presumptions and burdens' – disappear[s], and the sole remaining issue [is] 'discrimination *vel non*.'"  Id. at 142-43 (quoting St. Mary's Honor Ctr., 509 U.S. at 510, and U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)).

To make a prima facie showing of retaliation, a plaintiff must establish:  (1) that he engaged in activity protected by Title VII; (2) that he was subjected to a materially adverse action by his employer; and (3) a causal connection between the protected activity and the adverse action.  See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 978 n.52 (11th Cir. 2008).  WCF argues that Plaintiff has not stated a prima facie case of retaliation, challenging his satisfaction of the first and third elements.  WCF contends that Plaintiff did not engage in protected activity, asserting that the only complaint Plaintiff made was his list of twenty-nine allegations against Osman, Neece, and Bleddyn and that Plaintiff did not have a good faith belief that the actions of those three WCF employees amounted to an unlawful employment practice.  This argument is not well-taken.

A plaintiff can satisfy the first prong if she "shows that he had a good faith, reasonable belief that the employer was engaged in unlawful practices."  See Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997).  "[A] plaintiff's burden under this standard has both a subjective and an objective component.  A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of

the facts and record presented." Id.  Although, as noted above, Plaintiff has not presented evidence showing that the actions of these three employees rose to the level of severity or pervasiveness to amount to an actionable hostile work environment, the Court is unable to conclude that Plaintiff did not have a good faith belief that he was complaining about an unlawful employment practice at the time he submitted the list and filed his first EEOC charge; moreover, viewing the evidence in the light most favorable to Plaintiff, such belief was not objectively unreasonable.  Thus, the first element of the prima facie case is deemed satisfied.

WCF also challenges the third element – a causal connection between the protected activity and the materially adverse action.  Generally, a close temporal proximity between a plaintiff's protected activity and the materially adverse action satisfies this element.  See, e.g., Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) ("A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case.").  Here, however, there was an intervening event between Plaintiff's protected activity and his suspension and termination – the independent complaint by a co-worker of an intimidating, threatening remark by Plaintiff.  This intervening event severed whatever inference of causation arose from the temporal proximity between Plaintiff's initial EEOC charge and his suspension and termination.  See Hankins v. AirTran Airways, Inc., 237 Fed. Appx. 513, 520-21 (11th Cir. 2007) (noting that "close temporal proximity between two events, standing alone, is not a panacea, absent any other evidence that the employment decision was causally related to the protected activity," and finding no causal connection where plaintiff yelled at a co-worker

five days after she complained; the plaintiff's intervening "act of misconduct broke the causal chain"); <u>accord</u> <u>Kiel v. Select Artificials</u>, 169 F.3d 1131, 1136 (8th Cir. 1999) (affirming grant of summary judgment to employer on retaliation claim based on lack of causal link where the plaintiff's "intervening unprotected conduct eroded any causal connection that was suggested by the temporal proximity of his protected conduct and his termination").  Thus, Plaintiff has failed to present a prima facie case of retaliation.

Moreover, even if the Court found the causal connection not severed and the prima facie case satisfied, Plaintiff's retaliation claims would fail at the pretext stage of the analysis. In response to Plaintiff's prima facie case, WCF has articulated legitimate nondiscriminatory reasons for terminating him – the reasons listed in Mr. Earl's letter terminating Plaintiff: unacceptable job performance; complaints against Plaintiff of sexual harassment, which were substantiated by an investigation; Plaintiff's false claims of harassment by his female co-workers, as proven untrue in an investigation; and the threatening comment Plaintiff made to a co-employee regarding the safety of her child.  Thus, WCF is entitled to summary judgment on the retaliation claims unless Plaintiff presents evidence creating a genuine issue of material fact regarding whether WCF's reasons were a mere pretext for discrimination. <u>See, e.g.,</u> <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."); <u>accord</u> <u>Evans v. McClain of Ga., Inc.</u>, 131 F.3d 957, 964-65 (11th Cir. 1997) ("Under the established rule of law in this Circuit, a plaintiff can survive a motion for summary judgment or for judgment as a matter of law by

presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons.").

In determining whether an issue has been raised as to pretext, this Court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not actually what motivated its conduct." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation omitted).  This determination involves an "evaluat[ion of] whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Id. (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996)).  "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." Holifield, 115 F.3d at 1565.

Applying these standards, Plaintiff has failed to present evidence sufficient to create a genuine issue of material fact regarding whether WCF's reasons for its actions were a pretext for retaliation.  See Tidwell v. Carter Prods., 135 F.3d 1422, 1427 (11th Cir. 1998) (finding no issue raised as to pretext where evidence presented did "not provide the needed 'more than a mere scintilla of evidence' to survive a motion for judgment as a matter of law" and did "not present a substantial conflict in the evidence as to [the employer's] purported reason for terminating [the plaintiff] . . . as to support a jury question").  Plaintiff's attempts to attribute his suspension and termination to retaliatory motives are purely speculative.

The record belies unlawful retaliation by WCF.  With regard to Plaintiff's work performance, there is record evidence supporting WCF's opinion of Plaintiff's productivity, and Plaintiff's protestations to the contrary do not suffice to refute WCF's assessment. Additionally, WCF plainly investigated the complaints that were made – both by and against Plaintiff – and even called in an outside investigator who interviewed nearly twenty witnesses and compiled a forty-six page report.  Moreover, Plaintiff does not contest that the complaints were made against him; he only challenges the accounts of his co-workers.  And, although Plaintiff contends that the listing of his unsubstantiated claims of sexual harassment as a reason for his termination constitutes "direct evidence" of retaliatory motive (see Doc. 28 at 6), this argument misses the mark.  In stating this reason, WCF cites Plaintiff's false accusations of improper conduct by others – in violation of its harassment policy[11] – not Plaintiff's protected activity.  Even Plaintiff does not claim that his assertions against his female co-workers – the accusations that were determined to be false – were protected

---

[11]WCF's harassment policy provides in part:

> [I]f harassment is established, WCF will discipline the offender. Disciplinary action for a violation of this policy can range from verbal or written warnings up to and including immediate termination, depending upon the circumstances.  **Given the nature of discrimination and harassment, WCF also recognizes that false accusations of harassment can have serious effects on innocent people.   Therefore, WCF reserves the right to take appropriate action against any individual after a thorough investigation of all complaints.**

(Harassment Policy, Attach. to Cobb Aff.) (emphasis added).

activity[12]; the only protected activity that Plaintiff engaged in was his accusation of race and national origin discrimination against male supervisors and co-workers.

Plaintiff also denies making the threatening comment regarding a co-worker's child, claiming she must have misunderstood him; however, he does not contest that the co-worker claimed that he made the statement or that she perceived it as threatening.  Plaintiff has not raised a genuine issue of material fact as to whether WCF had a good faith belief that Plaintiff's behavior was inappropriate in the workplace.  See, e.g., Smith v. Ala. Dep't of Pub. Safety, 64 F. Supp. 2d 1215, 1228 (M.D. Ala. 1999) ("'[T]he court's responsibility [is] not to second guess the wisdom of [the employer's] reasoning, but to determine if the reasons given were merely a cover for discriminatory intent.'") (quoting Brown v. Am. Honda Motor Co., 939 F.3d 946, 951 (11th Cir. 1991)).  The law does not require employers to tolerate such behavior, even where complaints of discrimination have been made.  Cf. Rollins v. Fla. Dep't of Law Enforcement, 868 F.2d 397, 401 (11th Cir. 1989) (finding that disruptive manner in which employee complained about discrimination provided the employer with a legitimate reason to deny her promotion).  Accordingly, WCF's motion for summary judgment on Plaintiff's retaliation claims shall be granted.

### III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Summary Judgment (Doc. 26) filed by Defendant Workforce Central

---

[12](See Pl.'s Dep. at 166, 172 (stating that he did not complain about being sexually harassed; he just "got a little defensive")).

Florida is **GRANTED** as to all of Plaintiff's claims.

      2.  All other pending motions are **DENIED as moot**.

      3.  The Clerk is directed to enter judgment in favor of Defendant in accordance with this Order.  Thereafter, the Clerk shall close this file.

      **DONE** and **ORDERED** in Orlando, Florida this 21st day of April, 2008.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party